**FOURTH DIVISION**
**DILLARD, P. J.,**
**RICKMAN and PIPKIN, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**February 15, 2024**

# In the Court of Appeals of Georgia

A23A1454. IN THE INTEREST OF L. H., a child.

Pipkin, Judge.

After terminating the parental rights of L. H.'s biological parents, the Wilkinson County Juvenile Court concluded that it was in the child's best interest to remove him from the foster home of Jessica and Monica Turcotte and placed him with his paternal aunt and her husband, Regina and James Mabry. The Turcottes now appeal this order, asserting that the evidence does not support the juvenile court's decision. While we agree with the Turcottes that the evidence before the juvenile court shows that they are aptly able to care for L. H., the evidence also supports the juvenile court's placement of the child with the Mabrys. Accordingly, we affirm.

L. H. was declared dependant almost immediately after his premature birth in October 2020, and he was placed with the Turcottes shortly thereafter; the Turcottes

already had custody of one of L. H.'s siblings, Z. T. In April 2021, the Department of Human Services through the Wilkinson County Division of Family and Children Services petitioned the juvenile court to terminate the rights of L. H.'s biological parents. A few months later -- after the mother's parental rights had been terminated and L. H. had been legitimated by his biological father through DNA testing -- the Mabrys sought to intervene in the matter and have the child placed with them. The Turcottes objected to any change in placement, and the guardian ad litem recommended that L. H. stay with the Turcottes.

At a subsequent hearing concerning the termination of the father's parental rights and L. H.'s placement, the juvenile court received oral testimony, evidentiary submissions, and legal argument. As relevant to this appeal, the juvenile court learned that L. H. is a special needs child who was exposed to HIV at birth and has failed to meet developmental milestones; the evidence also shows that the child requires periodic HIV testing, may have hearing and speech impairments, and needs on-going occupational and physical therapies. With respect to L. H.'s placement, the juvenile court learned that the Mabrys had completed both foster-parent training and a home evaluation, which included a check of personal references and a drug screen.

Testimony revealed that the Mabrys live in a large home with extended family -- namely one of L. H.'s adult siblings and her children -- and that L. H.'s family on his father's side consists of 25-30 close-knit individuals.

Regina Mabry testified that she has a bachelor's degree and has completed course work toward a master's degree; she retired as a captain from the Fulton County Sheriff's Office, where she helped "run the jail" and worked on the "medical floor." Similarly, James Mabry has some college education, is a "retired military sergeant," and is currently a lieutenant at the Richmond County Correctional Institution. While the Mabrys had only approximately 24 hours of supervised visitation with L. H. at the time of the hearing, the juvenile court received testimony from the visitation supervisor, Sharon Adams, that the Mabrys were always prepared for the visits -- bringing diapers, toys, music, and blankets -- and were attentive to the child; Adams testified that L. H. had bonded with the couple. Additionally, L. H.'s foster care case manager testified at the hearing and recommended that the child be placed with the Mabrys.

The juvenile court ruled from the bench and subsequently entered an order memorializing its ruling. In its decision, the juvenile court first laid out the framework

for evaluating the placement of a child following the termination of parental rights as dictated by OCGA § 15-11-321 (a); the trial court then concluded that, while both couples could provide a loving and stable home -- and both couples wanted to adopt the child -- it was in L. H.'s best interest to be placed with his biological family, the Mabrys. On appeal, the Turcottes assert that the juvenile court's conclusion was erroneous and unsupported by the evidence. We disagree.

OCGA § 15-11-321 (a) provides, in relevant part, as follows:

(a) When a court enters an order terminating the parental rights of a parent or accepts a parent's voluntary surrender of parental rights . . . a placement may be made only if the court finds that such placement is in the best interests of the child[.] In determining which placement is in a child's best interests, the court shall enter findings of fact reflecting its consideration of the following:

(1) Such child's need for a placement that offers the greatest degree of legal permanence and security;

(2) The least disruptive placement for such child;

(3) Such child's sense of attachment and need for continuity of relationships;

(4) The value of biological and familial connections; and

4

(5) Any other factors the court deems relevant to its determination.

We review the juvenile court's placement under this provision for abuse of discretion. See *In the Interest of S. P.* 336 Ga. App. 488, 502 (3) (784 SE2d 846) (2016).

While the Turcottes ostensibly argue that the evidence does not support the juvenile court's conclusion under OCGA § 15-11-321 (a), their true complaint is the manner in which the juvenile court evaluated the evidence. Indeed, they challenge the "weight" that the juvenile court gave to L. H.'s "familial connections" to the Turcottes' extended family, to the time that L. H. had spent with the Turcottes, to the fact that L. H. was being removed from Z. T., and to the recommendation by the guardian ad litem.[1] However, the juvenile court is given broad authority to weigh the evidence in these instances, and "[w]e are not authorized to substitute our judgment for that of the juvenile court." *In the Interest of S. V.*, 281 Ga. App. 331, 333 (2) (636 SE2d 80) (2006).

---

[1] The materials before this Court suggests that the juvenile court gave little weight to the report of the guardian ad litem because her conclusions and recommendations were reached without the benefit of having observed L. H. with the Mabrys.

Further, the Turcottes' arguments mischaracterize the juvenile court's ruling. For instance, the Turcottes say that the juvenile court did not take into consideration the limited time that L. H. had spent with the Mabrys or, they say, the limited understanding that the Mabrys had about L. H.'s medical conditions and providers. However, the juvenile court concluded that the Mabrys could not be faulted for not knowing L. H. was their nephew until he was legitimated in late May 2021; further, the juvenile court determined that L. H.'s placement transition would occur over a series of months, giving all parties time to learn and adjust.[2] While the Turcottes claim that the juvenile court "completely ignored the biological connection between [L. H.] and [Z. T.]," as well as the familial connections between L. H. and the Turcottes' extended family, the juvenile court expressly addressed these concerns. In its remarks from the bench, the juvenile court specifically noted L. H.'s strong connection to his foster family, recognized that L. H.'s move may prove difficult for Z. T., and acknowledged that placing L. H. with the Mabrys may be disruptive, but the juvenile

---

[2] While the Turcottes complain that the Mabrys reside in Augusta, which is hours away from L. H.'s current healthcare providers in Macon, the juvenile court recognized from the bench that Regina Mabry is retired and could begin "talking to those providers in Macon about possible referrals to doctors in Augusta."

court ultimately concluded that, given L. H.'s young age, all such concerns were outweighed by the benefit of L. H. being placed with his biological family.

As the juvenile court recognized below, both the Turcottes and the Mabrys "are good families" who "have shown a love and a commitment to [L. H.]." However, the juvenile court determined that it was in the child's best interest to be placed with the Mabrys, and "[b]ecause there was evidence supporting the juvenile court's findings as to the best interest of the child, its judgment must be upheld." *In the Interest of S.V.*, 281 Ga. App. at 333 (2).

*Judgment affirmed. Dillard, P. J., and Rickman, J., concur.*